UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

Marcus Irvin, Danielle Callender, Evan Crawford,
Alyssa White, Lynn Hammell, Lisa Stewart, and
Eleonor Lindner,

      Plaintiffs,

vs.

NCL (BAHAMAS) LTD. d/b/a NCL,

      Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Marcus Irvin, Danielle Callender, Evan Crawford, Alyssa White, Lynn Hammell, Lisa Stewart, and Eleonor Lindner (hereinafter "Plaintiffs"), sues Defendant, NCL (BAHAMAS) LTD. (hereinafter, "NCL" of "the cruise line") and alleges:

## THE PARTIES & JURISDICTION

1.  Plaintiff, Marcus Irvin, is a resident of Maryland.

2.  Plaintiff, Danielle Callender, is a resident of Maryland.

3.  Plaintiff, Evan Crawford, is a resident of Maryland.

4.  Plaintiff, Alyssa White, is a resident of Maryland.

5.  Plaintiff, Lynn Hammell, is a resident of Illinois.

6.  Plaintiff, Lisa Stewart, is a resident of Virginia.

7.  Plaintiff, Eleonor Lindner, is a resident of Maryland.

8.  Defendant, NCL (BAHAMAS) LTD (hereinafter referred to as "NCL"), is a foreign entity with its principal place of business in Miami, Florida, who is authorized to and conducts business in the state of Florida.

9.  This Court has diversity jurisdiction over this matter pursuant to 28 USC §1332 because Plaintiffs and Defendant are completely diverse and this is an action for damages that

exceeds this Court's minimum jurisdictional requirement of $75,000.00, exclusive of all interest and costs.

10. In the event diversity jurisdiction does not apply to any or all the Plaintiffs, then this Court has original jurisdiction over this matter pursuant to 28 USC §1333(1) (admiralty).

11. Venue is proper in the United States District Court for Southern District of Florida pursuant to the forum selection clause contained in the passenger ticket between Plaintiffs and Defendant.

12. All conditions precedent to the filing of this action have been performed or otherwise waived.

13. Defendant, NCL, at all times material, personally or through an agent:

a) Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

b) Was engaged in substantial activity within this state;

c) Operated vessels in the waters of this state;

d) Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193;

e) The acts of Defendant set out in this Complaint occurred in whole or in part in this county and/or state.

14. Defendant is subject to the jurisdiction of the Courts of this state.

15. The causes of action asserted in this Complaint arise under the General Maritime Law of the United States.

16. At all times material hereto, Defendant owned, operated, managed, maintained and/or controlled the vessel, *Norwegian Escape*.

17. All of the named Plaintiffs are joined in this action as they assert relief which arises out of the same occurrence that occurred on March 3, 2019 and raises questions of law or fact common to all named Plaintiffs. See FRCP Rule 20(a).

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

18. This lawsuit arises from an affirmative decision made by the Defendant NCL's to sail the *Norwegian Escape*, carrying more than 4,000 paying passengers and over 1,000 crew members, directly into the path of a massive known, foreseeable weather event.

19. On March 3, 2019, the passengers and crew on board the *Norwegian Escape* left the New York heading for Port Canaveral, Florida, scheduled to arrive on March 5, 2018.

20. At approximately midnight, Defendant, NCL, knowingly and intentionally choose to sail the passengers and crew, on board the *Norwegian Escape*, into high winds causing those on board to be subjected to three (3) separate listing events caused by this winter storm.

21. The severity of this storm,  and its consequences were foreseeable and should have been anticipated, based upon the technology and resources available to NCL, and its own, third party, public, and private weather reports proceeding the decision to leave port from New York City, New York, on March 3, 2019.

22. The consequences of the storm and the three (3) separate listing events were therefore avoidable and preventable by diligence, prudence and reasonable care under the circumstances.

23. The *Norwegian Escape* was northeast of the Delmarva Peninsula at the time of the incident.

24. The *Norwegian Escape*, its passengers, and crew abruptly listed (tilted) into a 45-degree angle, towards its left, or port, side, when the winds struck, forcing the ship perilously close

to the sea. The most extreme gust of wind was estimated to be in excess of 115 miles per hour.

25. The sustained winds were in excess of 115 mph, 100 knots, which, according to the Saffir Simpson Hurricane scale, is the equivalent of a Category 3 (major) hurricane.

26. Passengers describe three (3) separate tilts. First, an initial tilt. Next, a much stronger second tilt, and then a third tilt that caused damage across the ship.

27. During the listing event, passengers describe hearing a "loud boom."

28. Throughout the initial events, no shipboard announcements were made providing any warning, reassurances, or instructions from the captain or any crew members.

29. The only announcement made was by ship's captain was for a "Code Alpha," without any explanation, only increasing the fears and uncertainty of the already terrified passenger population. Many passengers witnessed the crew of the *Norwegian Escape* donning their life vests, without explanation. In response, and reflexively, many passengers asked to be supplied life vests, but the crew members remained silent, serving to add to their increasing fear and confusion. Many passengers believed the vessel was about to capsize.

30. During the event, passengers who were seated were thrown from their chairs and onto the ground. Those passengers, in their cabins, asleep, were throw out of their beds. In the casino, passengers experienced chaos as money, chips, game tables and chairs all crashed towards the port side. In one instance, many passengers, witnessed a slot machine, at which a fellow passenger was playing, come crashing down on top of that passenger pinning and crushing her which caused horrific and visible injuries. Similar events were being played out around the ship especially in public areas, including  in the lounges and bars, where passengers were

knocked off chairs, pinned against walls by tables, struck by glass including bottles and glassware and furniture, and many people were seen "flying to one side of the ship."

31. All Plaintiffs sustained physical impact over the course of this ordeal.

## NCL's CRUISING EXPERIENCE AND HISTORY

32. Defendant NCL is an experienced cruise operator who owns and operates over fifteen (15) cruise ships including the *Escape*.

33. Defendant NCL has been operating its ships to and from ports in the northeastern United States, the Caribbean, and other destinations for many years. These ports of embarkation (starting point of the voyage) and debarkation (end point of the voyage) include Brooklyn, New York; New York, New York; Boston, Massachusetts; and in the summer months, Anchorage Alaska; and Seattle, Washington.

34. Defendant NCL has also been operating it's vessels in foreign ports in the northern hemisphere which include Quebec City, Canada; Stockholm, Sweden; Copenhagen, Denmark; Vancouver, B.C. Canada; Amsterdam, Netherlands; Tokyo, Japan; and in the southern hemisphere in Auckland, New Zealand; Buenos Aires, Argentina; Santiago, Chile; and Cape Horn, South Africa.

35. It is commonly known that these ports experience harsh winters, which extend from late fall into early spring. A company with NCL's experience, resources, depth of knowledge, international scope, and the number of employees mandates a commonsense approach to known and foreseeable seasonal conditions. In anticipation of these foreseeable seasonal changes, NCL and all major cruise lines rotate ships around the globe to take advantage of favorable and avoid harsh seasonal conditions.

36. When NCL began sailing to and from ports in New York and Massachusetts as well as along the north eastern seaboard it made a knowing and conscious decision to either avoid harsh winter storm conditions or manage and learn from past experience for the safety and welfare of its own passengers crew and multi-hundred million dollar vessels. This is elemental sound and best business practices.

37. Defendant NCL's knowing, intentional, and reckless conduct subjects NCL to the imposition of punitive damages.

38. Prior to setting sail, there were numerous forecasts which predicted the storm, and its general path that the was to *Norwegian Escape* travel.

39. Moreover, and significantly, NCL's homeport and principle place of business is Miami-Dade County, Florida which is well known to this Court, and all residents to colloquially be "in the eye of the storm" during the Atlantic hurricane season.

40. Experience has taught all businesses and residents annually threatened by hurricane season, to prepare in advance, and to have a manageable and achievable hurricane preparedness plan. Accordingly, local businesses and residents shop, save, prepare, organize and anticipate needs for each and every hurricane season, acquiring supplies, non-perishable food, drinking and bathing water, fuel, gasoline, equipment, window coverings, and other home and property protection in the days and weeks before a forecasted, and approaching storm. Potentially catastrophic storms require a viable escape plan and greater preparation. Prudent safety and business practices mandate nothing less.

### PRIOR WINTER HURRICANE FORCE STORMS- THE NCL BREAKAWAY

41. On January 2, 2018 defendant NCL had a substantially and strikingly similar winter storm incident involving the *Norwegian Breakaway*, and over 5000 passengers and crew. In that

incident, the *Breakaway* was returning to the port of Bayonne, New Jersey, after it abruptly

left NCL's private island, Great Stirrup Cay, in the Bahamas, cancelling a scheduled beach

day, and evacuating by tender all passengers and crew by 10am on the morning of January 2,

2018.  Over 5000 passengers and crew experienced harrowing and sustained hurricane force

winds, reported as up to 125 knots, or over 130 mph, and 30-foot to 40-foot waves.

42. Also substantially similar to passenger complaints during this voyage, in the *Breakaway*

incident "many passengers felt abandoned by the Captain, due to a consistent lack of

meaningful and reassuring announcements or information and updates after the ship had

departed Great Stirrup Cay at approximately 11 a.m. on January 2, 2018, and throughout the

harrowing voyage back to New York, ultimately arriving January 5, 2018." See Wheeler et.

al. v. NCL (Bahamas) Ltd., Case No. 18-cv-25374-MGC, [DE 1] COMPLAINT and Demand

for Jury Trial against NCL.

43. This incident became known as a "Grayson Bomb Cyclone" storm, and resulted in 251

passengers filing suit, all of whom filed lawsuits which were ultimately consolidated in

*Wilson, et. al. v NCL Bahamas (LTD)* Case No. 18-20503.  This law firm represented 70

passengers who suffered damages, many of whom suffered and were diagnosed with chronic

PTSD and physical injuries.

44. The path sailed by the *Escape* along the eastern seaboard of the United States, was very

similar to that sailed by the *Breakaway*. Many of the injuries suffered by *Escape* passengers

during the return voyage to New Jersey were substantially similar to those suffered in this

event.

45. The events encountered by NCL and passengers on the *Norwegian Breakaway* during the

January 2018 voyage provide constructive notice to Defendant NCL. Those facts and

circumstances are substantially similar and are persuasive evidence of notice sufficient to find liability under general maritime law and the law of this Circuit.

46. Also before this incident, in September 2018, the *Norwegian Escape* was one of two cruise ships (the other being the Royal Caribbean *Grandeur of the Seas*), that were forced to change its planned course, because of the threat of Hurricane Florence, diverting to Port Canaveral instead of the Bahamas.

## The Coming Storm

47. Based on NCL's experience and it's familiarity with cruising to and from ports that experience winter storm conditions, and its prior experience of the *Norwegian Breakaway,* in January 2018, NCL is well equipped to anticipate, forecast, and respond to these known hazardous conditions. NCL is more than capable of taking timely action against these threats and to execute a winter storm plan to avoid or minimize the hazards created by these weather events.

48. In this instance, before setting sail, rough weather and high winds were moving east across the United States, as a series of deadly tornadoes struck several southern states before moving offshore, and into the path of the *Escape.*

49. Before 11:00 PM on March 3, 2019, NCL made the decision to navigate the *Escape* into this dangerous weather system along the Atlantic seaboard.

50. NCL did so knowingly, and despite media forecasts, weather forecasts, meteorological reports, the ship Captain's own weather forecasts, third party services available to the Captain and the bridge senior crew, and NCL's Shoreside Navigation Department.

51. NCL knew before it left port on March 3, 2019, that the same winter storm that was in the *Escape's* projected path, had already produced 10.6 inches of snow in Boston,

Massachusetts, had been named "Winter Storm Scott", which had become part of a much larger and unified  weather system that connected all the way from the Northeast to the Deep South, which had spawned a significant number of tornadoes in the early afternoon hours of March 3, 2019, including as many as forty (40) tornadoes, some with estimated wind speeds in excess of 160 mph causing the deaths of twenty-three (23) people in Alabama.

52. At 9:00 PM (EST), on March 3, 2019, The Weather Channel and "weather.com" reported that "Winter Storm Scott" quickly crossed through the southeast into Sunday evening, bringing moisture northward and strong winds southward. "[Winter Storm Scott's] cold front, which preceded a record-breaking batch of early March Arctic air was the focus of severe wind gusts and a squall line".

53. NCL and the *Escape's* shipboard officers including the Captain and senior crew are trained to anticipate adverse weather conditions. NCL maintains a well-staffed and equipped Shoreside Navigation Department, including experienced Captains, Navigators, and Meteorologists and are always available to assist in navigational decision making.

54. NCL consistently tracks the positions and paths of all its vessels. NCL ensures that its Shoreside Navigation Department is always available for these weather events. In fact coordination between the ship, its bridge, Captain, senior staff, and the Shoreside Navigation Department is critical to the safe operation of its vessels, at sea, including the *Norwegian Escape*.

55. On or about March 3, 2019, NCL, NCL's Shoreside Navigation Department, and the *Norwegian Escape*'s Captain were in communication regarding weather and sea forecasts, and jointly decided him to sail into this winter storm event.

56. Once the storm force winds struck the *Norwegian Escape* many passengers felt abandoned by the Captain, due to a lack of meaningful, consistent, and reassuring announcements and updates.

57. Many passengers felt greater injuries could have been avoided by warning passengers and crew of the foreseeable and imminent listing event.

58. The lack of information, warning, and reassurance by the Captain and his staff contributed to passengers, mental anguish, terror, and fear of not returning home safely or surviving this horrific event.

59. NCL knew or should have known of these storm conditions, but nonetheless, the *Norwegian Escape* sailed towards this area of predicted high winds.

## <u>COUNT 1- NEGLIGENCE (Marcus Irvin)</u>

Plaintiff re-allege, adopt, and incorporate by reference the allegations in paragraphs 1 through 59 as though alleged originally herein and further allege:

60. Defendant NCL owed passengers including plaintiff a duty of reasonable care under the circumstances.

61. On or about March 3, 2019, NCL and/or its agents, servants, and/or employees breached its duty to Plaintiff to act with reasonable care under the circumstances.

62. Moreover, the Defendant, NCL, had constructive notice of the dangers of sailing the *Norwegian Escape* into a known, foreseeable, forecasted, and predicted winter storm which could, and did, generate hurricane force winds resulting in a severe listing of the ship based upon its prior experience with the *Norwegian Breakaway* in January 2018.

63. NCL had actual notice, in this event, when it chose to sail into the projected severe winds and weather conditions on March 3, 2019, because it's Shoreside Navigation Department, NCL,

and *Norwegian Escape*'s Captain and senior crew was guilty of negligently operating and navigating the *Norwegian Escape*.

64. By this same conduct, NCL created this dangerous and hazardous condition which caused damages, injury, pain, and suffering to all plaintiffs and many other passengers and crew who experienced the harrowing winter storm events.

65. Plaintiff was injured due to the fault and/or negligence of Defendant NCL, and/or its agents, servants, and/or employees as follows:

  a. Failure to use reasonable care to provide a safe voyage for Plaintiffs and others similarly situated, fit with proper and adequate machinery, crew, and equipment; and/or

  b. Navigating and operating the subject vessel into severe known and foreseeable weather conditions; and/or

  c. Failing to have proper policies and procedures in place to determine whether if and when it is appropriate to sail into dangerous weather conditions; and/or

  d. Failing to have proper policies and procedures in place to decide when to abandon a previously scheduled itinerary due to adverse weather conditions;

  e. Failing to heed and follow forecasts of severe and potentially dangerous weather conditions;

  f. Affirmatively deciding to sail the vessel into the projected and scheduled path of the winter storm and failing to re-route the ship despite severe weather warnings; and/or

  g. Failing to have adequate technology capable of properly monitoring weather conditions in real time; and/or

  h. Sailing the vessel into hurricane-force winds; and/or

  i. Failing to turn back the vessel and/or divert the vessel and/or seek safe harbor before and encountering the hurricane-force winds; and/or

  j. Failing to warn passengers of the imminent dangers of approaching foreseeable severe weather, severe wind, and wave conditions, and advising passengers and crew to take shelter, avoid open spaces, and public areas in an effort to limit and

or minimize standing and/or sitting and/or walking around during the foreseeable listing event in light of the expected weather and sea conditions; and/or

k.  Failing to warn passengers of the imminent dangers and advising them to brace or position themselves safely during the listing event in light of the expected weather and sea conditions; and/or

l.  Once the initial event happened, and after the first listing event, while the storm continued, by failing to make regular, consistent and reassuring announcements throughout the ship, to communicate with passengers and to reassure them that their Captain and senior crew were managing and controlling the situation to the best of their ability in an effort to assuage fears and to provide leadership during the crisis; and/or

m.  Failing to take a safe route from New York to avoid the hurricane-force winds; and/or

n.  Failing to alter the route to a safer route while at sea; and/or

o.  Exposing the vessel to weather and sea conditions that the vessel was unfit for; and/or

p.  Failing to promulgate and/or enforce adequate policies and procedures to prevent the vessel from sailing into dangerous weather conditions; and/or

q.  Failing to promulgate and or enforce adequate policies and procedures to require the vessel to turn around and/or divert the vessel's path from the dangerous weather conditions; and/or

r.  Failing to utilize and engage the ship's stabilizers in an attempt to manage, minimize, or control the worst impacts of the storm winds, waves, swells and listing events; and/or

s.  Failing to use reasonable care to promulgate and/or enforce adequate policies and procedures to ensure that the vessel was operated in a safe weather condition; and/or

t.  Exposing its passengers to hurricane force weather conditions; and/or

u.  Failure to promulgate and/or enforce adequate policies and procedures to ensure that safety would not be compromised for cost and/or profits; and/or

v.  Failure to adequately maintain the Norwegian Escape, its engines and machinery, so as to prevent the failure of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

w.  Failure to warn of inadequate maintenance aboard the vessel as it was sailing through dangerous weather conditions; and/or

x.  Failure to adequately inspect the *Norwegian Escape*, its engines, machinery, and systems to prevent the failure of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

y.  Failure to promulgate policies and/or procedures aimed at preventing the failure of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

z.  Failure to promulgate policies and/or procedures aimed at ensuring an adequate emergency plan to protect the health and welfare of passengers during an emergency; and/or

aa. Failure to determine and/or appreciate the hazards associated with operating the subject vessel's propulsion system while encountering severe weather and sea conditions; and/or

bb. Knowingly, willfully, wantonly, and outrageously deciding to sail the subject vessel into severe weather conditions while knowing the high probability of injury and/or death to passengers; and/or

cc. Failure to promulgate adequate storm avoidance policies aimed at ensuring the safety of passengers; and/or

dd. Failure to employ an in-house meteorological staff tasked with monitoring storms and/or sea conditions to ensure the safety of passengers.

66. At all material times, Defendant NCL had exclusive custody and control of the vessel, *Norwegian Escape.*

67. Defendant knew of the foregoing conditions causing Plaintiffs' injuries and did not correct them, or the conditions existed for a sufficient length of time so that Defendant in the exercise of reasonable care under the circumstances should have learned of them and corrected them.

68. As a result of the negligence of NCL, Plaintiffs were injured about their body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of

enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law against the Defendant, including punitive damages[1], and demands trial by jury.

## COUNT 2- NEGLIGENCE (Danielle Callender)

Plaintiff re-allege, adopt, and incorporate by reference the allegations in paragraphs 1 through 59 as though alleged originally herein and further allege:

69. Defendant NCL owed passengers including plaintiff a duty of reasonable care under the circumstances.

70. On or about March 3, 2019, NCL and/or its agents, servants, and/or employees breached its duty to Plaintiff to act with reasonable care under the circumstances.

71. Moreover, the Defendant, NCL, had constructive notice of the dangers of sailing the *Norwegian Escape* into a known, foreseeable, forecasted, and predicted winter storm which could, and did, generate hurricane force winds resulting in a severe listing of the ship based upon its prior experience with the *Norwegian Breakaway* in January 2018.

72. NCL had actual notice, in this event, when it chose to sail into the projected severe winds and weather conditions on March 3, 2019, because it's Shoreside Navigation Department, NCL,

---

[1] "A plaintiff may recover punitive damages under general maritime law, consistent with the common-law rule, where the plaintiff's injury was due to the defendant's wanton, willful, or outrageous conduct." Lobegeiger v. Celebrity Cruises, Inc., No. 11-21620-CIV, 2011 WL 3703329, at *7 (S.D. Fla. Aug. 23, 2011).

and *Norwegian Escape*'s Captain and senior crew was guilty of negligently operating and navigating the *Norwegian Escape*.

73. By this same conduct, NCL created this dangerous and hazardous condition which caused damages, injury, pain, and suffering to all plaintiffs and many other passengers and crew who experienced the harrowing winter storm events.

74. Plaintiff was injured due to the fault and/or negligence of Defendant NCL, and/or its agents, servants, and/or employees as follows:

    a. Failure to use reasonable care to provide a safe voyage for Plaintiffs and others similarly situated, fit with proper and adequate machinery, crew, and equipment; and/or

    b. Navigating and operating the subject vessel into severe known and foreseeable weather conditions; and/or

    c. Failing to have proper policies and procedures in place to determine whether if and when it is appropriate to sail into dangerous weather conditions; and/or

    d. Failing to have proper policies and procedures in place to decide when to abandon a previously scheduled itinerary due to adverse weather conditions;

    e. Failing to heed and follow forecasts of severe and potentially dangerous weather conditions;

    f. Affirmatively deciding to sail the vessel into the projected and scheduled path of the winter storm and failing to re-route the ship despite severe weather warnings; and/or

    g. Failing to have adequate technology capable of properly monitoring weather conditions in real time; and/or

    h. Sailing the vessel into hurricane-force winds; and/or

    i. Failing to turn back the vessel and/or divert the vessel and/or seek safe harbor before and encountering the hurricane-force winds; and/or

    j. Failing to warn passengers of the imminent dangers of approaching foreseeable severe weather, severe wind, and wave conditions, and advising passengers and crew to take shelter, avoid open spaces, and public areas in an effort to limit and

or minimize standing and/or sitting and/or walking around during the foreseeable listing event in light of the expected weather and sea conditions; and/or

k.  Failing to warn passengers of the imminent dangers and advising them to brace or position themselves safely during the listing event in light of the expected weather and sea conditions; and/or

l.  Once the initial event happened, and after the first listing event, while the storm continued, by failing to make regular, consistent and reassuring announcements throughout the ship, to communicate with passengers and to reassure them that their Captain and senior crew were managing and controlling the situation to the best of their ability in an effort to assuage fears and to provide leadership during the crisis; and/or

m.  Failing to take a safe route from New York to avoid the hurricane-force winds; and/or

n.  Failing to alter the route to a safer route while at sea; and/or

o.  Exposing the vessel to weather and sea conditions that the vessel was unfit for; and/or

p.  Failing to promulgate and/or enforce adequate policies and procedures to prevent the vessel from sailing into dangerous weather conditions; and/or

q.  Failing to promulgate and or enforce adequate policies and procedures to require the vessel to turn around and/or divert the vessel's path from the dangerous weather conditions; and/or

r.  Failing to utilize and engage the ship's stabilizers in an attempt to manage, minimize, or control the worst impacts of the storm winds, waves, swells and listing events; and/or

s.  Failing to use reasonable care to promulgate and/or enforce adequate policies and procedures to ensure that the vessel was operated in a safe weather condition; and/or

t.  Exposing its passengers to hurricane force weather conditions; and/or

u.  Failure to promulgate and/or enforce adequate policies and procedures to ensure that safety would not be compromised for cost and/or profits; and/or

v.  Failure to adequately maintain the Norwegian Escape, its engines and machinery, so as to prevent the failure of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

w. Failure to warn of inadequate maintenance aboard the vessel as it was sailing through dangerous weather conditions; and/or

x. Failure to adequately inspect the *Norwegian Escape*, its engines, machinery, and systems to prevent the failure of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

y. Failure to promulgate policies and/or procedures aimed at preventing the failure of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

z. Failure to promulgate policies and/or procedures aimed at ensuring an adequate emergency plan to protect the health and welfare of passengers during an emergency; and/or

aa. Failure to determine and/or appreciate the hazards associated with operating the subject vessel's propulsion system while encountering severe weather and sea conditions; and/or

bb. Knowingly, willfully, wantonly, and outrageously deciding to sail the subject vessel into severe weather conditions while knowing the high probability of injury and/or death to passengers; and/or

cc. Failure to promulgate adequate storm avoidance policies aimed at ensuring the safety of passengers; and/or

dd. Failure to employ an in-house meteorological staff tasked with monitoring storms and/or sea conditions to ensure the safety of passengers.

75. At all material times, Defendant NCL had exclusive custody and control of the vessel, *Norwegian Escape.*

76. Defendant knew of the foregoing conditions causing Plaintiffs' injuries and did not correct them, or the conditions existed for a sufficient length of time so that Defendant in the exercise of reasonable care under the circumstances should have learned of them and corrected them.

77. As a result of the negligence of NCL, Plaintiffs were injured about their body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of

enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law against the Defendant, including punitive damages[2], and demands trial by jury.

## COUNT 3- NEGLIGENCE (Evan Crawford)

Plaintiff re-allege, adopt, and incorporate by reference the allegations in paragraphs 1 through 59 as though alleged originally herein and further allege:

78. Defendant NCL owed passengers including plaintiff a duty of reasonable care under the circumstances.

79. On or about March 3, 2019, NCL and/or its agents, servants, and/or employees breached its duty to Plaintiff to act with reasonable care under the circumstances.

80. Moreover, the Defendant, NCL, had constructive notice of the dangers of sailing the *Norwegian Escape* into a known, foreseeable, forecasted, and predicted winter storm which could, and did, generate hurricane force winds resulting in a severe listing of the ship based upon its prior experience with the *Norwegian Breakaway* in January 2018.

81. NCL had actual notice, in this event, when it chose to sail into the projected severe winds and weather conditions on March 3, 2019, because it's Shoreside Navigation Department, NCL,

---

[2] "A plaintiff may recover punitive damages under general maritime law, consistent with the common-law rule, where the plaintiff's injury was due to the defendant's wanton, willful, or outrageous conduct." Lobegeiger v. Celebrity Cruises, Inc., No. 11-21620-CIV, 2011 WL 3703329, at *7 (S.D. Fla. Aug. 23, 2011).

and *Norwegian Escape*'s Captain and senior crew was guilty of negligently operating and navigating the *Norwegian Escape*.

82. By this same conduct, NCL created this dangerous and hazardous condition which caused damages, injury, pain, and suffering to all plaintiffs and many other passengers and crew who experienced the harrowing winter storm events.

83. Plaintiff was injured due to the fault and/or negligence of Defendant NCL, and/or its agents, servants, and/or employees as follows:

   a. Failure to use reasonable care to provide a safe voyage for Plaintiffs and others similarly situated, fit with proper and adequate machinery, crew, and equipment; and/or

   b. Navigating and operating the subject vessel into severe known and foreseeable weather conditions; and/or

   c. Failing to have proper policies and procedures in place to determine whether if and when it is appropriate to sail into dangerous weather conditions; and/or

   d. Failing to have proper policies and procedures in place to decide when to abandon a previously scheduled itinerary due to adverse weather conditions;

   e. Failing to heed and follow forecasts of severe and potentially dangerous weather conditions;

   f. Affirmatively deciding to sail the vessel into the projected and scheduled path of the winter storm and failing to re-route the ship despite severe weather warnings; and/or

   g. Failing to have adequate technology capable of properly monitoring weather conditions in real time; and/or

   h. Sailing the vessel into hurricane-force winds; and/or

   i. Failing to turn back the vessel and/or divert the vessel and/or seek safe harbor before and encountering the hurricane-force winds; and/or

   j. Failing to warn passengers of the imminent dangers of approaching foreseeable severe weather, severe wind, and wave conditions, and advising passengers and crew to take shelter, avoid open spaces, and public areas in an effort to limit and

or minimize standing and/or sitting and/or walking around during the foreseeable listing event in light of the expected weather and sea conditions; and/or

k. Failing to warn passengers of the imminent dangers and advising them to brace or position themselves safely during the listing event in light of the expected weather and sea conditions; and/or

l. Once the initial event happened, and after the first listing event, while the storm continued, by failing to make regular, consistent and reassuring announcements throughout the ship, to communicate with passengers and to reassure them that their Captain and senior crew were managing and controlling the situation to the best of their ability in an effort to assuage fears and to provide leadership during the crisis; and/or

m. Failing to take a safe route from New York to avoid the hurricane-force winds; and/or

n. Failing to alter the route to a safer route while at sea; and/or

o. Exposing the vessel to weather and sea conditions that the vessel was unfit for; and/or

p. Failing to promulgate and/or enforce adequate policies and procedures to prevent the vessel from sailing into dangerous weather conditions; and/or

q. Failing to promulgate and or enforce adequate policies and procedures to require the vessel to turn around and/or divert the vessel's path from the dangerous weather conditions; and/or

r. Failing to utilize and engage the ship's stabilizers in an attempt to manage, minimize, or control the worst impacts of the storm winds, waves, swells and listing events; and/or

s. Failing to use reasonable care to promulgate and/or enforce adequate policies and procedures to ensure that the vessel was operated in a safe weather condition; and/or

t. Exposing its passengers to hurricane force weather conditions; and/or

u. Failure to promulgate and/or enforce adequate policies and procedures to ensure that safety would not be compromised for cost and/or profits; and/or

v. Failure to adequately maintain the Norwegian Escape, its engines and machinery, so as to prevent the failure of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

w. Failure to warn of inadequate maintenance aboard the vessel as it was sailing through dangerous weather conditions; and/or

x. Failure to adequately inspect the *Norwegian Escape*, its engines, machinery, and systems to prevent the failure of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

y. Failure to promulgate policies and/or procedures aimed at preventing the failure of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

z. Failure to promulgate policies and/or procedures aimed at ensuring an adequate emergency plan to protect the health and welfare of passengers during an emergency; and/or

aa. Failure to determine and/or appreciate the hazards associated with operating the subject vessel's propulsion system while encountering severe weather and sea conditions; and/or

bb. Knowingly, willfully, wantonly, and outrageously deciding to sail the subject vessel into severe weather conditions while knowing the high probability of injury and/or death to passengers; and/or

cc. Failure to promulgate adequate storm avoidance policies aimed at ensuring the safety of passengers; and/or

dd. Failure to employ an in-house meteorological staff tasked with monitoring storms and/or sea conditions to ensure the safety of passengers.

84. At all material times, Defendant NCL had exclusive custody and control of the vessel, *Norwegian Escape.*

85. Defendant knew of the foregoing conditions causing Plaintiffs' injuries and did not correct them, or the conditions existed for a sufficient length of time so that Defendant in the exercise of reasonable care under the circumstances should have learned of them and corrected them.

86. As a result of the negligence of NCL, Plaintiffs were injured about their body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of

enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law against the Defendant, including punitive damages[3], and demands trial by jury.

## COUNT 4- NEGLIGENCE (Alyssa White)

Plaintiff re-allege, adopt, and incorporate by reference the allegations in paragraphs 1 through 59 as though alleged originally herein and further allege:

87. Defendant NCL owed passengers including plaintiff a duty of reasonable care under the circumstances.

88. On or about March 3, 2019, NCL and/or its agents, servants, and/or employees breached its duty to Plaintiff to act with reasonable care under the circumstances.

89. Moreover, the Defendant, NCL, had constructive notice of the dangers of sailing the *Norwegian Escape* into a known, foreseeable, forecasted, and predicted winter storm which could, and did, generate hurricane force winds resulting in a severe listing of the ship based upon its prior experience with the *Norwegian Breakaway* in January 2018.

90. NCL had actual notice, in this event, when it chose to sail into the projected severe winds and weather conditions on March 3, 2019, because it's Shoreside Navigation Department, NCL,

---

[3] "A plaintiff may recover punitive damages under general maritime law, consistent with the common-law rule, where the plaintiff's injury was due to the defendant's wanton, willful, or outrageous conduct." Lobegeiger v. Celebrity Cruises, Inc., No. 11-21620-CIV, 2011 WL 3703329, at *7 (S.D. Fla. Aug. 23, 2011).

and *Norwegian Escape*'s Captain and senior crew was guilty of negligently operating and navigating the *Norwegian Escape*.

91. By this same conduct, NCL created this dangerous and hazardous condition which caused damages, injury, pain, and suffering to all plaintiffs and many other passengers and crew who experienced the harrowing winter storm events.

92. Plaintiff was injured due to the fault and/or negligence of Defendant NCL, and/or its agents, servants, and/or employees as follows:

> a. Failure to use reasonable care to provide a safe voyage for Plaintiffs and others similarly situated, fit with proper and adequate machinery, crew, and equipment; and/or
>
> b. Navigating and operating the subject vessel into severe known and foreseeable weather conditions; and/or
>
> c. Failing to have proper policies and procedures in place to determine whether if and when it is appropriate to sail into dangerous weather conditions; and/or
>
> d. Failing to have proper policies and procedures in place to decide when to abandon a previously scheduled itinerary due to adverse weather conditions;
>
> e. Failing to heed and follow forecasts of severe and potentially dangerous weather conditions;
>
> f. Affirmatively deciding to sail the vessel into the projected and scheduled path of the winter storm and failing to re-route the ship despite severe weather warnings; and/or
>
> g. Failing to have adequate technology capable of properly monitoring weather conditions in real time; and/or
>
> h. Sailing the vessel into hurricane-force winds; and/or
>
> i. Failing to turn back the vessel and/or divert the vessel and/or seek safe harbor before and encountering the hurricane-force winds; and/or
>
> j. Failing to warn passengers of the imminent dangers of approaching foreseeable severe weather, severe wind, and wave conditions, and advising passengers and crew to take shelter, avoid open spaces, and public areas in an effort to limit and

or minimize standing and/or sitting and/or walking around during the foreseeable listing event in light of the expected weather and sea conditions; and/or

k.  Failing to warn passengers of the imminent dangers and advising them to brace or position themselves safely during the listing event in light of the expected weather and sea conditions; and/or

l.  Once the initial event happened, and after the first listing event, while the storm continued, by failing to make regular, consistent and reassuring announcements throughout the ship, to communicate with passengers and to reassure them that their Captain and senior crew were managing and controlling the situation to the best of their ability in an effort to assuage fears and to provide leadership during the crisis; and/or

m.  Failing to take a safe route from New York to avoid the hurricane-force winds; and/or

n.  Failing to alter the route to a safer route while at sea; and/or

o.  Exposing the vessel to weather and sea conditions that the vessel was unfit for; and/or

p.  Failing to promulgate and/or enforce adequate policies and procedures to prevent the vessel from sailing into dangerous weather conditions; and/or

q.  Failing to promulgate and or enforce adequate policies and procedures to require the vessel to turn around and/or divert the vessel's path from the dangerous weather conditions; and/or

r.  Failing to utilize and engage the ship's stabilizers in an attempt to manage, minimize, or control the worst impacts of the storm winds, waves, swells and listing events; and/or

s.  Failing to use reasonable care to promulgate and/or enforce adequate policies and procedures to ensure that the vessel was operated in a safe weather condition; and/or

t.  Exposing its passengers to hurricane force weather conditions; and/or

u.  Failure to promulgate and/or enforce adequate policies and procedures to ensure that safety would not be compromised for cost and/or profits; and/or

v.  Failure to adequately maintain the Norwegian Escape, its engines and machinery, so as to prevent the failure of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

w. Failure to warn of inadequate maintenance aboard the vessel as it was sailing through dangerous weather conditions; and/or

x. Failure to adequately inspect the *Norwegian Escape*, its engines, machinery, and systems to prevent the failure of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

y. Failure to promulgate policies and/or procedures aimed at preventing the failure of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

z. Failure to promulgate policies and/or procedures aimed at ensuring an adequate emergency plan to protect the health and welfare of passengers during an emergency; and/or

aa. Failure to determine and/or appreciate the hazards associated with operating the subject vessel's propulsion system while encountering severe weather and sea conditions; and/or

bb. Knowingly, willfully, wantonly, and outrageously deciding to sail the subject vessel into severe weather conditions while knowing the high probability of injury and/or death to passengers; and/or

cc. Failure to promulgate adequate storm avoidance policies aimed at ensuring the safety of passengers; and/or

dd. Failure to employ an in-house meteorological staff tasked with monitoring storms and/or sea conditions to ensure the safety of passengers.

93. At all material times, Defendant NCL had exclusive custody and control of the vessel, *Norwegian Escape.*

94. Defendant knew of the foregoing conditions causing Plaintiffs' injuries and did not correct them, or the conditions existed for a sufficient length of time so that Defendant in the exercise of reasonable care under the circumstances should have learned of them and corrected them.

95. As a result of the negligence of NCL, Plaintiffs were injured about their body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of

enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law against the Defendant, including punitive damages[4], and demands trial by jury.

## COUNT 5- NEGLIGENCE (Lynn Hammell)

Plaintiff re-allege, adopt, and incorporate by reference the allegations in paragraphs 1 through 59 as though alleged originally herein and further allege:

96. Defendant NCL owed passengers including plaintiff a duty of reasonable care under the circumstances.

97. On or about March 3, 2019, NCL and/or its agents, servants, and/or employees breached its duty to Plaintiff to act with reasonable care under the circumstances.

98. Moreover, the Defendant, NCL, had constructive notice of the dangers of sailing the *Norwegian Escape* into a known, foreseeable, forecasted, and predicted winter storm which could, and did, generate hurricane force winds resulting in a severe listing of the ship based upon its prior experience with the *Norwegian Breakaway* in January 2018.

---

[4] "A plaintiff may recover punitive damages under general maritime law, consistent with the common-law rule, where the plaintiff's injury was due to the defendant's wanton, willful, or outrageous conduct." Lobegeiger v. Celebrity Cruises, Inc., No. 11-21620-CIV, 2011 WL 3703329, at *7 (S.D. Fla. Aug. 23, 2011).

99. NCL had actual notice, in this event, when it chose to sail into the projected severe winds and weather conditions on March 3, 2019, because it's Shoreside Navigation Department, NCL, and *Norwegian Escape*'s Captain and senior crew was guilty of negligently operating and navigating the *Norwegian Escape*.

100. By this same conduct, NCL created this dangerous and hazardous condition which caused damages, injury, pain, and suffering to all plaintiffs and many other passengers and crew who experienced the harrowing winter storm events.

101. Plaintiff was injured due to the fault and/or negligence of Defendant NCL, and/or its agents, servants, and/or employees as follows:

   a. Failure to use reasonable care to provide a safe voyage for Plaintiffs and others similarly situated, fit with proper and adequate machinery, crew, and equipment; and/or

   b. Navigating and operating the subject vessel into severe known and foreseeable weather conditions; and/or

   c. Failing to have proper policies and procedures in place to determine whether if and when it is appropriate to sail into dangerous weather conditions; and/or

   d. Failing to have proper policies and procedures in place to decide when to abandon a previously scheduled itinerary due to adverse weather conditions;

   e. Failing to heed and follow forecasts of severe and potentially dangerous weather conditions;

   f. Affirmatively deciding to sail the vessel into the projected and scheduled path of the winter storm and failing to re-route the ship despite severe weather warnings; and/or

   g. Failing to have adequate technology capable of properly monitoring weather conditions in real time; and/or

   h. Sailing the vessel into hurricane-force winds; and/or

   i. Failing to turn back the vessel and/or divert the vessel and/or seek safe harbor before and encountering the hurricane-force winds; and/or

j.   Failing to warn passengers of the imminent dangers of approaching foreseeable severe weather, severe wind, and wave conditions, and advising passengers and crew to take shelter, avoid open spaces, and public areas in an effort to limit and or minimize standing and/or sitting and/or walking around during the foreseeable listing event in light of the expected weather and sea conditions; and/or

k.   Failing to warn passengers of the imminent dangers and advising them to brace or position themselves safely during the listing event in light of the expected weather and sea conditions; and/or

l.   Once the initial event happened, and after the first listing event, while the storm continued, by failing to make regular, consistent and reassuring announcements throughout the ship, to communicate with passengers and to reassure them that their Captain and senior crew were managing and controlling the situation to the best of their ability in an effort to assuage fears and to provide  leadership during the crisis; and/or

m.   Failing to take a safe route from New York to avoid the hurricane-force winds; and/or

n.   Failing to alter the route to a safer route while at sea; and/or

o.   Exposing the vessel to weather and sea conditions that the vessel was unfit for; and/or

p.   Failing to promulgate and/or enforce adequate policies and procedures to prevent the vessel from sailing into dangerous weather conditions; and/or

q.   Failing to promulgate and or enforce adequate policies and procedures to require the vessel to turn around and/or divert the vessel's path from the dangerous weather conditions; and/or

r.   Failing to utilize and engage the ship's stabilizers in an attempt to manage, minimize, or control the worst impacts of the storm winds, waves, swells and listing events; and/or

s.   Failing to use reasonable care to promulgate and/or enforce adequate policies and procedures to ensure that the vessel was operated in a safe weather condition; and/or

t.   Exposing its passengers to hurricane force weather conditions; and/or

u.   Failure to promulgate and/or enforce adequate policies and procedures to ensure that safety would not be compromised for cost and/or profits; and/or

v.  Failure to adequately maintain the Norwegian Escape, its engines and machinery, so as to prevent the failure of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

w.  Failure to warn of inadequate maintenance aboard the vessel as it was sailing through dangerous weather conditions; and/or

x.  Failure to adequately inspect the *Norwegian Escape*, its engines, machinery, and systems to prevent the failure of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

y.  Failure to promulgate policies and/or procedures aimed at preventing the failure of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

z.  Failure to promulgate policies and/or procedures aimed at ensuring an adequate emergency plan to protect the health and welfare of passengers during an emergency; and/or

aa. Failure to determine and/or appreciate the hazards associated with operating the subject vessel's propulsion system while encountering severe weather and sea conditions; and/or

bb. Knowingly, willfully, wantonly, and outrageously deciding to sail the subject vessel into severe weather conditions while knowing the high probability of injury and/or death to passengers; and/or

cc. Failure to promulgate adequate storm avoidance policies aimed at ensuring the safety of passengers; and/or

dd. Failure to employ an in-house meteorological staff tasked with monitoring storms and/or sea conditions to ensure the safety of passengers.

102. At all material times, Defendant NCL had exclusive custody and control of the vessel, *Norwegian Escape.*

103. Defendant knew of the foregoing conditions causing Plaintiffs' injuries and did not correct them, or the conditions existed for a sufficient length of time so that Defendant in the exercise of reasonable care under the circumstances should have learned of them and corrected them.

104. As a result of the negligence of NCL, Plaintiffs were injured about their body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law against the Defendant, including punitive damages[5], and demands trial by jury.

## COUNT 6- NEGLIGENCE (Lisa Stewart)

Plaintiff re-allege, adopt, and incorporate by reference the allegations in paragraphs 1 through 59 as though alleged originally herein and further allege:

105.    Defendant NCL owed passengers including plaintiff a duty of reasonable care under the circumstances.

106.    On or about March 3, 2019, NCL and/or its agents, servants, and/or employees breached its duty to Plaintiff to act with reasonable care under the circumstances.

107.    Moreover, the Defendant, NCL, had constructive notice of the dangers of sailing the *Norwegian Escape* into a known, foreseeable, forecasted, and predicted winter storm which

---

[5] "A plaintiff may recover punitive damages under general maritime law, consistent with the common-law rule, where the plaintiff's injury was due to the defendant's wanton, willful, or outrageous conduct." Lobegeiger v. Celebrity Cruises, Inc., No. 11-21620-CIV, 2011 WL 3703329, at *7 (S.D. Fla. Aug. 23, 2011).

could, and did, generate hurricane force winds resulting in a severe listing of the ship based upon its prior experience with the *Norwegian Breakaway* in January 2018.

108. NCL had actual notice, in this event, when it chose to sail into the projected severe winds and weather conditions on March 3, 2019, because it's Shoreside Navigation Department, NCL, and *Norwegian Escape*'s Captain and senior crew was guilty of negligently operating and navigating the *Norwegian Escape*.

109. By this same conduct, NCL created this dangerous and hazardous condition which caused damages, injury, pain, and suffering to all plaintiffs and many other passengers and crew who experienced the harrowing winter storm events.

110. Plaintiff was injured due to the fault and/or negligence of Defendant NCL, and/or its agents, servants, and/or employees as follows:

    a. Failure to use reasonable care to provide a safe voyage for Plaintiffs and others similarly situated, fit with proper and adequate machinery, crew, and equipment; and/or

    b. Navigating and operating the subject vessel into severe known and foreseeable weather conditions; and/or

    c. Failing to have proper policies and procedures in place to determine whether if and when it is appropriate to sail into dangerous weather conditions; and/or

    d. Failing to have proper policies and procedures in place to decide when to abandon a previously scheduled itinerary due to adverse weather conditions;

    e. Failing to heed and follow forecasts of severe and potentially dangerous weather conditions;

    f. Affirmatively deciding to sail the vessel into the projected and scheduled path of the winter storm and failing to re-route the ship despite severe weather warnings; and/or

    g. Failing to have adequate technology capable of properly monitoring weather conditions in real time; and/or

    h. Sailing the vessel into hurricane-force winds; and/or

i.   Failing to turn back the vessel and/or divert the vessel and/or seek safe harbor before and encountering the hurricane-force winds; and/or

j.   Failing to warn passengers of the imminent dangers of approaching foreseeable severe weather, severe wind, and wave conditions, and advising passengers and crew to take shelter, avoid open spaces, and public areas in an effort to limit and or minimize standing and/or sitting and/or walking around during the foreseeable listing event in light of the expected weather and sea conditions; and/or

k.   Failing to warn passengers of the imminent dangers and advising them to brace or position themselves safely during the listing event in light of the expected weather and sea conditions; and/or

l.   Once the initial event happened, and after the first listing event, while the storm continued, by failing to make regular, consistent and reassuring announcements throughout the ship, to communicate with passengers and to reassure them that their Captain and senior crew were managing and controlling the situation to the best of their ability in an effort to assuage fears and to provide  leadership during the crisis; and/or

m.   Failing to take a safe route from New York to avoid the hurricane-force winds; and/or

n.   Failing to alter the route to a safer route while at sea; and/or

o.   Exposing the vessel to weather and sea conditions that the vessel was unfit for; and/or

p.   Failing to promulgate and/or enforce adequate policies and procedures to prevent the vessel from sailing into dangerous weather conditions; and/or

q.   Failing to promulgate and or enforce adequate policies and procedures to require the vessel to turn around and/or divert the vessel's path from the dangerous weather conditions; and/or

r.   Failing to utilize and engage the ship's stabilizers in an attempt to manage, minimize, or control the worst impacts of the storm winds, waves, swells and listing events; and/or

s.   Failing to use reasonable care to promulgate and/or enforce adequate policies and procedures to ensure that the vessel was operated in a safe weather condition; and/or

t.   Exposing its passengers to hurricane force weather conditions; and/or

u.  Failure to promulgate and/or enforce adequate policies and procedures to ensure that safety would not be compromised for cost and/or profits; and/or

v.  Failure to adequately maintain the Norwegian Escape, its engines and machinery, so as to prevent the failure of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

w.  Failure to warn of inadequate maintenance aboard the vessel as it was sailing through dangerous weather conditions; and/or

x.  Failure to adequately inspect the *Norwegian Escape*, its engines, machinery, and systems to prevent the failure of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

y.  Failure to promulgate policies and/or procedures aimed at preventing the failure of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

z.  Failure to promulgate policies and/or procedures aimed at ensuring an adequate emergency plan to protect the health and welfare of passengers during an emergency; and/or

aa. Failure to determine and/or appreciate the hazards associated with operating the subject vessel's propulsion system while encountering severe weather and sea conditions; and/or

bb. Knowingly, willfully, wantonly, and outrageously deciding to sail the subject vessel into severe weather conditions while knowing the high probability of injury and/or death to passengers; and/or

cc. Failure to promulgate adequate storm avoidance policies aimed at ensuring the safety of passengers; and/or

dd. Failure to employ an in-house meteorological staff tasked with monitoring storms and/or sea conditions to ensure the safety of passengers.

111. At all material times, Defendant NCL had exclusive custody and control of the vessel, *Norwegian Escape.*

112. Defendant knew of the foregoing conditions causing Plaintiffs' injuries and did not correct them, or the conditions existed for a sufficient length of time so that Defendant in the

exercise of reasonable care under the circumstances should have learned of them and corrected them.

113. As a result of the negligence of NCL, Plaintiffs were injured about their body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law against the Defendant, including punitive damages[6], and demands trial by jury.

## COUNT 7- NEGLIGENCE (Eleonor Lindner)

Plaintiff re-allege, adopt, and incorporate by reference the allegations in paragraphs 1 through 59 as though alleged originally herein and further allege:

114.    Defendant NCL owed passengers including plaintiff a duty of reasonable care under the circumstances.

115.    On or about March 3, 2019, NCL and/or its agents, servants, and/or employees breached its duty to Plaintiff to act with reasonable care under the circumstances.

---

[6] "A plaintiff may recover punitive damages under general maritime law, consistent with the common-law rule, where the plaintiff's injury was due to the defendant's wanton, willful, or outrageous conduct." Lobegeiger v. Celebrity Cruises, Inc., No. 11-21620-CIV, 2011 WL 3703329, at *7 (S.D. Fla. Aug. 23, 2011).

116.    Moreover, the Defendant, NCL, had constructive notice of the dangers of sailing the *Norwegian Escape* into a known, foreseeable, forecasted, and predicted winter storm which could, and did, generate hurricane force winds resulting in a severe listing of the ship based upon its prior experience with the *Norwegian Breakaway* in January 2018.

117. NCL had actual notice, in this event, when it chose to sail into the projected severe winds and weather conditions on March 3, 2019, because it's Shoreside Navigation Department, NCL, and *Norwegian Escape*'s Captain and senior crew was guilty of negligently operating and navigating the *Norwegian Escape*.

118. By this same conduct, NCL created this dangerous and hazardous condition which caused damages, injury, pain, and suffering to all plaintiffs and many other passengers and crew who experienced the harrowing winter storm events.

119. Plaintiff was injured due to the fault and/or negligence of Defendant NCL, and/or its agents, servants, and/or employees as follows:

   a.  Failure to use reasonable care to provide a safe voyage for Plaintiffs and others similarly situated, fit with proper and adequate machinery, crew, and equipment; and/or

   b.  Navigating and operating the subject vessel into severe known and foreseeable weather conditions; and/or

   c.  Failing to have proper policies and procedures in place to determine whether if and when it is appropriate to sail into dangerous weather conditions; and/or

   d.  Failing to have proper policies and procedures in place to decide when to abandon a previously scheduled itinerary due to adverse weather conditions;

   e.  Failing to heed and follow forecasts of severe and potentially dangerous weather conditions;

   f.  Affirmatively deciding to sail the vessel into the projected and scheduled path of the winter storm and failing to re-route the ship despite severe weather warnings; and/or

g.  Failing to have adequate technology capable of properly monitoring weather conditions in real time; and/or

h.  Sailing the vessel into hurricane-force winds; and/or

i.  Failing to turn back the vessel and/or divert the vessel and/or seek safe harbor before and encountering the hurricane-force winds; and/or

j.  Failing to warn passengers of the imminent dangers of approaching foreseeable severe weather, severe wind, and wave conditions, and advising passengers and crew to take shelter, avoid open spaces, and public areas in an effort to limit and or minimize standing and/or sitting and/or walking around during the foreseeable listing event in light of the expected weather and sea conditions; and/or

k.  Failing to warn passengers of the imminent dangers and advising them to brace or position themselves safely during the listing event in light of the expected weather and sea conditions; and/or

l.  Once the initial event happened, and after the first listing event, while the storm continued, by failing to make regular, consistent and reassuring announcements throughout the ship, to communicate with passengers and to reassure them that their Captain and senior crew were managing and controlling the situation to the best of their ability in an effort to assuage fears and to provide leadership during the crisis; and/or

m.  Failing to take a safe route from New York to avoid the hurricane-force winds; and/or

n.  Failing to alter the route to a safer route while at sea; and/or

o.  Exposing the vessel to weather and sea conditions that the vessel was unfit for; and/or

p.  Failing to promulgate and/or enforce adequate policies and procedures to prevent the vessel from sailing into dangerous weather conditions; and/or

q.  Failing to promulgate and or enforce adequate policies and procedures to require the vessel to turn around and/or divert the vessel's path from the dangerous weather conditions; and/or

r.  Failing to utilize and engage the ship's stabilizers in an attempt to manage, minimize, or control the worst impacts of the storm winds, waves, swells and listing events; and/or

s.   Failing to use reasonable care to promulgate and/or enforce adequate policies and procedures to ensure that the vessel was operated in a safe weather condition; and/or

t.   Exposing its passengers to hurricane force weather conditions; and/or

u.   Failure to promulgate and/or enforce adequate policies and procedures to ensure that safety would not be compromised for cost and/or profits; and/or

v.   Failure to adequately maintain the Norwegian Escape, its engines and machinery, so as to prevent the failure of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

w.   Failure to warn of inadequate maintenance aboard the vessel as it was sailing through dangerous weather conditions; and/or

x.   Failure to adequately inspect the *Norwegian Escape*, its engines, machinery, and systems to prevent the failure of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

y.   Failure to promulgate policies and/or procedures aimed at preventing the failure of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

z.   Failure to promulgate policies and/or procedures aimed at ensuring an adequate emergency plan to protect the health and welfare of passengers during an emergency; and/or

aa.  Failure to determine and/or appreciate the hazards associated with operating the subject vessel's propulsion system while encountering severe weather and sea conditions; and/or

bb.  Knowingly, willfully, wantonly, and outrageously deciding to sail the subject vessel into severe weather conditions while knowing the high probability of injury and/or death to passengers; and/or

cc.  Failure to promulgate adequate storm avoidance policies aimed at ensuring the safety of passengers; and/or

dd.  Failure to employ an in-house meteorological staff tasked with monitoring storms and/or sea conditions to ensure the safety of passengers.

120. At all material times, Defendant NCL had exclusive custody and control of the vessel,

*Norwegian Escape.*

121. Defendant knew of the foregoing conditions causing Plaintiffs' injuries and did not correct them, or the conditions existed for a sufficient length of time so that Defendant in the exercise of reasonable care under the circumstances should have learned of them and corrected them.

122. As a result of the negligence of NCL, Plaintiffs were injured about their body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law against the Defendant, including punitive damages[7], and demands trial by jury.

## COUNT 8 – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Marcus Irvin)

Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs 1 through 59 as though alleged originally herein and further allege:

123. At all times material, due to the negligence and/or gross negligence and/or intentional conduct of the Defendant, Plaintiffs were placed in an immediate risk of physical harm.

---

[7] "A plaintiff may recover punitive damages under general maritime law, consistent with the common-law rule, where the plaintiff's injury was due to the defendant's wanton, willful, or outrageous conduct." Lobegeiger v. Celebrity Cruises, Inc., No. 11-21620-CIV, 2011 WL 3703329, at *7 (S.D. Fla. Aug. 23, 2011).

Plaintiffs' risk of physical harm included but is not limited to injury and/or death and/or

severe emotional and/or psychological trauma.

124. Defendant's negligence and/or gross negligence and/or intentional and/or willful, wanton,

and outrageous conduct caused severe mental and/or emotional harm and/or distress in the

Plaintiffs, such as fear and anxiety. These emotional injuries and/or damages have also

resulted in physical manifestations, such as sickness, nausea, exhaustion, fatigue, headaches,

insomnia, lack of sleep, poor sleep and nightmares.

125. During the three listing events alleged in the complaint, Plaintiffs were subjected to the

violent hurricane-force winds, "loud booms" from the ship's haul and/or machinery, and a

general uncertainty about the seaworthiness of the vessel causing a reasonable fear of death

and the sinking of the vessel.

126. Plaintiffs aboard the *Norwegian Escape* were placed in the zone of danger as a result of the

violent weather conditions. Each Plaintiff was in close proximity to conditions which did

cause or could have caused serious physical, mental and/or emotional injury and/or illness.

127. Fear of death and experience of mental, emotional and/or physical harm were genuine and

well founded and Plaintiffs suffered mental or emotional harm (such as fright and anxiety)

that was caused by the negligence of NCL. This fright and anxiety has further manifested

itself as multiple physical symptoms experienced by the Plaintiffs, including but not limited

to insomnia, depression, anxiety, nightmares, and dizziness.

128. As a result of the negligent inflection of emotional distress by NCL, Plaintiffs were injured

about Plaintiffs' body and extremities, suffered both physical pain and suffering, mental and

emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability,

impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic

insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

<u>**COUNT 9 – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**</u>
<u>(**Danielle Callender**)</u>

Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs 1 through 59 as though alleged originally herein and further allege:

129. At all times material, due to the negligence and/or gross negligence and/or intentional conduct of the Defendant, Plaintiffs were placed in an immediate risk of physical harm. Plaintiffs' risk of physical harm included but is not limited to injury and/or death and/or severe emotional and/or psychological trauma.

130. Defendant's negligence and/or gross negligence and/or intentional and/or willful, wanton, and outrageous conduct caused severe mental and/or emotional harm and/or distress in the Plaintiffs, such as fear and anxiety. These emotional injuries and/or damages have also resulted in physical manifestations, such as sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep and nightmares.

131. During the three listing events alleged in the complaint, Plaintiffs were subjected to the violent hurricane-force winds, "loud booms" from the ship's haul and/or machinery, and a general uncertainty about the seaworthiness of the vessel causing a reasonable fear of death and the sinking of the vessel.

132. Plaintiffs aboard the *Norwegian Escape* were placed in the zone of danger as a result of the violent weather conditions. Each Plaintiff was in close proximity to conditions which did cause or could have caused serious physical, mental and/or emotional injury and/or illness.

133. Fear of death and experience of mental, emotional and/or physical harm were genuine and well founded and Plaintiffs suffered mental or emotional harm (such as fright and anxiety) that was caused by the negligence of NCL. This fright and anxiety has further manifested itself as multiple physical symptoms experienced by the Plaintiffs, including but not limited to insomnia, depression, anxiety, nightmares, and dizziness.

134. As a result of the negligent inflection of emotional distress by NCL, Plaintiffs were injured about Plaintiffs' body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

### COUNT 10 – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Evan Crawford)

Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs 1 through 59 as though alleged originally herein and further allege:

135. At all times material, due to the negligence and/or gross negligence and/or intentional conduct of the Defendant, Plaintiffs were placed in an immediate risk of physical harm. Plaintiffs' risk of physical harm included but is not limited to injury and/or death and/or severe emotional and/or psychological trauma.

136. Defendant's negligence and/or gross negligence and/or intentional and/or willful, wanton, and outrageous conduct caused severe mental and/or emotional harm and/or distress in the Plaintiffs, such as fear and anxiety. These emotional injuries and/or damages have also resulted in physical manifestations, such as sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep and nightmares.

137. During the three listing events alleged in the complaint, Plaintiffs were subjected to the violent hurricane-force winds, "loud booms" from the ship's haul and/or machinery, and a general uncertainty about the seaworthiness of the vessel causing a reasonable fear of death and the sinking of the vessel.

138. Plaintiffs aboard the *Norwegian Escape* were placed in the zone of danger as a result of the violent weather conditions. Each Plaintiff was in close proximity to conditions which did cause or could have caused serious physical, mental and/or emotional injury and/or illness.

139. Fear of death and experience of mental, emotional and/or physical harm were genuine and well founded and Plaintiffs suffered mental or emotional harm (such as fright and anxiety) that was caused by the negligence of NCL. This fright and anxiety has further manifested itself as multiple physical symptoms experienced by the Plaintiffs, including but not limited to insomnia, depression, anxiety, nightmares, and dizziness.

140. As a result of the negligent inflection of emotional distress by NCL, Plaintiffs were injured about Plaintiffs' body and extremities, suffered both physical pain and suffering, mental and

emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

<u>**COUNT 11 – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**</u>
(<u>**Alyssa White**</u>)

Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs 1 through 59 as though alleged originally herein and further allege:

141. At all times material, due to the negligence and/or gross negligence and/or intentional conduct of the Defendant, Plaintiffs were placed in an immediate risk of physical harm. Plaintiffs' risk of physical harm included but is not limited to injury and/or death and/or severe emotional and/or psychological trauma.

142. Defendant's negligence and/or gross negligence and/or intentional and/or willful, wanton, and outrageous conduct caused severe mental and/or emotional harm and/or distress in the Plaintiffs, such as fear and anxiety. These emotional injuries and/or damages have also resulted in physical manifestations, such as sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep and nightmares.

143. During the three listing events alleged in the complaint, Plaintiffs were subjected to the violent hurricane-force winds, "loud booms" from the ship's haul and/or machinery, and a

general uncertainty about the seaworthiness of the vessel causing a reasonable fear of death and the sinking of the vessel.

144. Plaintiffs aboard the *Norwegian Escape* were placed in the zone of danger as a result of the violent weather conditions. Each Plaintiff was in close proximity to conditions which did cause or could have caused serious physical, mental and/or emotional injury and/or illness.

145. Fear of death and experience of mental, emotional and/or physical harm were genuine and well founded and Plaintiffs suffered mental or emotional harm (such as fright and anxiety) that was caused by the negligence of NCL. This fright and anxiety has further manifested itself as multiple physical symptoms experienced by the Plaintiffs, including but not limited to insomnia, depression, anxiety, nightmares, and dizziness.

146. As a result of the negligent inflection of emotional distress by NCL, Plaintiffs were injured about Plaintiffs' body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

### COUNT 12 – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Lynn Hammell)

Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs 1 through 59 as though alleged originally herein and further allege:

147. At all times material, due to the negligence and/or gross negligence and/or intentional conduct of the Defendant, Plaintiffs were placed in an immediate risk of physical harm. Plaintiffs' risk of physical harm included but is not limited to injury and/or death and/or severe emotional and/or psychological trauma.

148. Defendant's negligence and/or gross negligence and/or intentional and/or willful, wanton, and outrageous conduct caused severe mental and/or emotional harm and/or distress in the Plaintiffs, such as fear and anxiety. These emotional injuries and/or damages have also resulted in physical manifestations, such as sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep and nightmares.

149. During the three listing events alleged in the complaint, Plaintiffs were subjected to the violent hurricane-force winds, "loud booms" from the ship's haul and/or machinery, and a general uncertainty about the seaworthiness of the vessel causing a reasonable fear of death and the sinking of the vessel.

150. Plaintiffs aboard the *Norwegian Escape* were placed in the zone of danger as a result of the violent weather conditions. Each Plaintiff was in close proximity to conditions which did cause or could have caused serious physical, mental and/or emotional injury and/or illness.

151. Fear of death and experience of mental, emotional and/or physical harm were genuine and well founded and Plaintiffs suffered mental or emotional harm (such as fright and anxiety) that was caused by the negligence of NCL. This fright and anxiety has further manifested itself as multiple physical symptoms experienced by the Plaintiffs, including but not limited to insomnia, depression, anxiety, nightmares, and dizziness.

152. As a result of the negligent inflection of emotional distress by NCL, Plaintiffs were injured about Plaintiffs' body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

### COUNT 13 – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Lisa Stewart)

Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs 1 through 59 as though alleged originally herein and further allege:

153. At all times material, due to the negligence and/or gross negligence and/or intentional conduct of the Defendant, Plaintiffs were placed in an immediate risk of physical harm. Plaintiffs' risk of physical harm included but is not limited to injury and/or death and/or severe emotional and/or psychological trauma.

154. Defendant's negligence and/or gross negligence and/or intentional and/or willful, wanton, and outrageous conduct caused severe mental and/or emotional harm and/or distress in the Plaintiffs, such as fear and anxiety. These emotional injuries and/or damages have also resulted in physical manifestations, such as sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep and nightmares.

155. During the three listing events alleged in the complaint, Plaintiffs were subjected to the violent hurricane-force winds, "loud booms" from the ship's haul and/or machinery, and a general uncertainty about the seaworthiness of the vessel causing a reasonable fear of death and the sinking of the vessel.

156. Plaintiffs aboard the *Norwegian Escape* were placed in the zone of danger as a result of the violent weather conditions. Each Plaintiff was in close proximity to conditions which did cause or could have caused serious physical, mental and/or emotional injury and/or illness.

157. Fear of death and experience of mental, emotional and/or physical harm were genuine and well founded and Plaintiffs suffered mental or emotional harm (such as fright and anxiety) that was caused by the negligence of NCL. This fright and anxiety has further manifested itself as multiple physical symptoms experienced by the Plaintiffs, including but not limited to insomnia, depression, anxiety, nightmares, and dizziness.

158. As a result of the negligent inflection of emotional distress by NCL, Plaintiffs were injured about Plaintiffs' body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

## COUNT 14 – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Eleonor Lindner)

Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs 1 through 59 as though alleged originally herein and further allege:

159. At all times material, due to the negligence and/or gross negligence and/or intentional conduct of the Defendant, Plaintiffs were placed in an immediate risk of physical harm. Plaintiffs' risk of physical harm included but is not limited to injury and/or death and/or severe emotional and/or psychological trauma.

160. Defendant's negligence and/or gross negligence and/or intentional and/or willful, wanton, and outrageous conduct caused severe mental and/or emotional harm and/or distress in the Plaintiffs, such as fear and anxiety. These emotional injuries and/or damages have also resulted in physical manifestations, such as sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep and nightmares.

161. During the three listing events alleged in the complaint, Plaintiffs were subjected to the violent hurricane-force winds, "loud booms" from the ship's haul and/or machinery, and a general uncertainty about the seaworthiness of the vessel causing a reasonable fear of death and the sinking of the vessel.

162. Plaintiffs aboard the *Norwegian Escape* were placed in the zone of danger as a result of the violent weather conditions. Each Plaintiff was in close proximity to conditions which did cause or could have caused serious physical, mental and/or emotional injury and/or illness.

163. Fear of death and experience of mental, emotional and/or physical harm were genuine and well founded and Plaintiffs suffered mental or emotional harm (such as fright and anxiety) that was caused by the negligence of NCL. This fright and anxiety has further manifested

itself as multiple physical symptoms experienced by the Plaintiffs, including but not limited to insomnia, depression, anxiety, nightmares, and dizziness.

164. As a result of the negligent inflection of emotional distress by NCL, Plaintiffs were injured about Plaintiffs' body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

**Dated:** March 2, 2020

Respectfully submitted,

HOLZBERG LEGAL
Offices at Pinecrest II, Suite 220
7685 S.W. 104th Street
Miami, Florida 33156
Telephone: (305) 668-6410
Facsimile: (305) 667-6161
By: */s/ Glenn J. Holzberg*
**GLENN J. HOLZBERG**
Florida Bar No.: 369551
Glenn@holzberglegal.com
*Counsel for Plaintiffs*